UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MELISSA ALLEN,   Case No. 1:15-cv-807

    Plaintiff,   Barrett, J.
                                        Bowman, M.J.
   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Melissa Allen filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff applied for Supplemental Security Income (SSI) on January 24, 2013, alleging disability since September 8, 2008. (Tr. 165-70). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On May 9, 2014, ALJ Michael Gaffaney held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and impartial vocational expert Brian Harmon. (Tr. 23-48). On July 28, 2014, the ALJ denied Plaintiff's applications in a written decision. (Tr. 10-18).

1

Plaintiff was born in 1971 and was 41 years old at the time her application was filed. She has an 11th grade education and no relevant work as defined by Social Security Regulations. (Tr. 17). She alleges disability based upon longstanding mental health issues and symptoms related to anxiety, depression, bipolar, and paranoia.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "depressive disorder; panic disorder with agoraphobia; and borderline personality disorder." (Tr. 11). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform a full range of work at all exertional levels but within the following non-exertional limitations:

> She is limited to simple, routine tasks with only occasional changes in a routine work setting, no production rate pace, only occasional interaction with co-workers and supervisors, and no public contact.

(Tr.14). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that significant other jobs exist in the national economy that Plaintiff could performed including kitchen helper, packager, and laundry worker. (Tr. 17). Accordingly, the ALJ determined that Plaintiff is not under disability as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) failing to give controlling weight to Plaintiff's treating

physicians; and 2) improperly evaluating Plaintiff's credibility.  Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

   **II.  Analysis**

   **A.  Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .

3

> . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Evaluation of opinion evidence*

Plaintiff argues first that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Baula.

The record indicates that Plaintiff began treating with Dr. Baula in March 2013. The initial Adult Diagnostic Assessment dated March 25, 2013 notes symptoms of anxiety, depression, paranoid thoughts and behavior, mood swings/hyperactivity, and trouble sleeping. (Tr. 270-275). Plaintiff was diagnosed with Depressive Disorder, Severe with psychotic symptoms, and Agoraphobia with Panic Disorder. (Tr. 277).

In June 2013, Dr. Baula completed a "mental status questionnaire" where he opined that Plaintiff was appropriately groomed, had coherent, linear, logical, and goal directed conversation, and a normal speech rate, rhythm, volume, and tone. (Tr. 288). He reported that Plaintiff described her mood as "hateful, bitter, and depressed" and noted that Plaintiff's affect was dysphoric, but with access to full range. *Id.* Plaintiff reported to Dr. Baula that her anxiety was an eight on a 1-10 scale and that she had symptoms that included heavy breathing and lightheadedness. *Id.*

Dr. Baula noted that Plaintiff did not have a thinking disorder and that she was oriented to person, place, time, and situation. Id. He further opined that Plaintiff's concentration was "poor," but that she could recall two out of three items on short recall with no long-term memory deficits, normal abstract reasoning, and a slightly below average range of intelligence. *Id.* Dr. Baula also noted that Plaintiff's insight and judgment were fair. *Id.* In all, Dr. Baula opined that Plaintiff was able to remember,

5

understand, and follow simple directions, maintain attention to do most tasks, and could persist at tasks and complete them in a timely fashion. (Tr. 289).

Dr. Baula also opined that Plaintiff did not get along well with most people, was anxious around them, and that she was anxious in new environments and situations. *Id.* Finally, he opined that Plaintiff would not respond well to pressure and that it would cause her to get into arguments with others, though she was able to do simple, routine, and repetitive tasks. *Id.*

In February 2014, Dr. Baula completed a checkbox "Mental Residual Functional Capacity Assessment" form where he noted that Plaintiff was markedly limited in her ability to carry out detailed instructions, maintain attention for extended periods, work in proximity to others without being distracted by them, complete a normal workday and workweek without interruption from her symptoms, interact appropriately with the general public, accept instructions from supervisors, get along with coworkers, maintain socially appropriate behavior, respond appropriately to change in the work setting, and travel to unfamiliar places on public transportation. (Tr. 291-92). In the narrative assessment, Dr. Baula opined that Plaintiff would have great difficulty getting along with others, was easily agitated, and reported severe anxiety around other people. (Tr. 293).

In May 2014, Dr. Baula wrote a letter stating that Plaintiff was unable to work due to her mental health conditions, and that she was "unable to interact with others in a work place setting." (Tr. 334).

The record also contains the following opinion evidence from state agency psychologists:

6

At the Agency's initial level of review, Kristen Haskins, Psy.D., opined Plaintiff had moderate difficulties in both (1) maintaining social functioning, and (2) maintaining concentration, persistence, or pace. (Tr. 54). Dr. Haskins further opined Plaintiff retains the ability to perform simple to moderate 1-4 step tasks without the requirement to maintain a fast pace, and is capable of occasional, superficial interactions with others. (Tr. 56). Regarding her social interaction limitations, Dr. Haskins acknowledges Plaintiff's history of mistrust, paranoid thoughts, and psychotic symptoms will cause difficulty working closely and cooperatively with others, but opines Plaintiff is capable of occasional, superficial interactions with others despite these limitations. (Tr. 57). Dr. Haskins further found that Plaintiff's anxiety and depression will cause difficulty adjusting to frequent changes in a work setting, but opines she should be capable of dealing with occasional changes. *Id.* On reconsideration, the state agency reviewing physician, Patricia Semmelman, Ph.D., adopted the residual functional capacity assessment found at the initial level. (Tr. 69-71).

On April 10, 2013, at the request of the agency, Plaintiff underwent a psychological consultative examination performed by James Rosenthal, Ph.D. Dr. Rosenthal diagnosed Depressive Disorder, NOS, and Panic Disorder without Agoraphobia. He noted Plaintiff's self-reports of anxiety and depressive symptoms appeared consistent with her presentation and reported history. (Tr. 267). In describing her functional abilities, Dr. Rosenthal opined Plaintiff's pace on complex or multi-step assignments will be delayed due to her anxiety and depressive symptoms. (Tr. 268). He further opined it is likely Plaintiff will isolate herself in a work setting, and likely work

stress will cause her to experience or report elevated symptoms of anxiety and depression causing her to leave work prematurely. (Tr. 268).

In formulating Plaintiff's RFC, the ALJ gave great weight to the findings of the state agency consultants Drs. Rosenthal, Haskins and Semmelman.  In this regard, the ALJ determined that the opinions of the state agency consulting psychologists were most consistent with the overall record.  The ALJ further determined that Dr. Baula's opinions were not supported by the evidence in the record and, therefore, not entitled to controlling or deferential weight. In so concluding, the ALJ noted Plaintiff's treatment history with Dr. Baula but also found that Dr. Baula's opinion that Plaintiff suffered from several marked limitations was not consistent with his own treatment notes, including Plaintiff's GAF scores, which indicated only moderate symptoms.

As noted by the Commissioner, despite Dr. Baula's opinion that Plaintiff had marked limitations in a variety of areas of functioning, at her intake interview, Dr. Baula assigned Plaintiff a Global Assessment of Functioning (GAF) score of 55, indicating only moderate symptomology. (Tr. 277-78). The consultative examiner, Dr. Rosenthal,  also assigned Plaintiff a GAF score of 55.  (Tr. 267). The ALJ also noted that the consultative examination showed that Plaintiff was cooperative and able to concentrate adequately, which was at odds with Dr. Baula's opinion that she was markedly limited in these areas. (Tr. 263-68).

Accordingly, the ALJ reasonably concluded that Dr. Baula's opinions were inconsistent with the record and, therefore, only entitled to some weight. (Tr. 16). *See* 20 C.F.R. § 416.927(c)(3)-(4).

Additionally, Plaintiff also asserts that the ALJ erred by giving "great" weight to the opinions of the state agency reviewing psychologists, who opined that Plaintiff was capable of simple to moderately complex tasks of one to four steps without a requirement to maintain a fast pace, and that Plaintiff could have occasional, superficial interactions with others, and could deal with occasional changes in the workplace. (Tr. 15-16, 55-57, 69-71). Plaintiff argues that under *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir. 2009), the ALJ was not permitted to rely on the opinions of these non-examining sources because they had not reviewed all of the opinions and other evidence from Dr. Baula. (Doc. 12. at 9, 11).

Plaintiff's reliance on *Blakely* is misplaced. In *Blakely,* the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician. The Sixth Circuit held that "[i]n appropriate circumstances, opinions from State agency medical ... consultants ... may be entitled to greater weight than the opinions of treating or examining sources." (*Id.,* at 409, quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *3 (July 2, 1996)). However, in *Blakely* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment ... by *Blakely's* treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakely,* 581 F.3d at 409 (quoting *Fisk v. Astrue,* 253 Fed.Appx. 580, 585 (6th Cir.2007)). Nevertheless, the Sixth Circuit reiterated the general principle that an ALJ's failure to provide adequate explanation for according less than controlling weight to a treating source may be excused if the error is harmless or *de minimis,* such as where "a treating source's opinion is so patently deficient that the Commissioner

9

could not possibly credit it." *Id.* at 409 (quoting *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 547 (6th Cir.2004)). Under *Blakely,* then, an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or *de minimis. Swartz v. Astrue,* No. 10–605, 2011 WL 4571877, at *8 (S.D.Ohio Aug.18, 2011) (Bowman, MJ) ("an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so") (citing *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir.2009)).

Upon evaluation of the complete record, including the opinion evidence, Plaintiff's treatment history and testimony at the administrative hearing, the ALJ determined that the opinions of Drs. Rosenthal, Haskins and Semmelman were consistent overall with the evidence of record and clearly articulated his rationale for doing so. Here, the ALJ's decision indicates that he subjected the opinions of the state agency reviewers to scrutiny. (Tr. 12-16). He reviewed the evidence in the record, including Dr. Baula's treatment notes and opinions, and reasonably concluded that the state agency reviewing psychologists' opinions were entitled to "great" weight as they were consistent with the medical evidence of record. See 20 C.F.R. § 416.927(c)(3)-(4).

As noted by the Commissioner, the ALJ also took into account that the state agency reviewing psychologists did not have access to the entirety of the record, considered the more recent evidence, and adopted an RFC finding more restrictive than the one proposed by the state agency reviewing psychologists. (Tr. 12-18). *See*

*McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition. It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in McGrew's condition.").

Accordingly, in light of the foregoing, the ALJ resolved conflicts between sources, evaluated the complete case record and enunciated the reasons that he chose to credit some medical opinions over others. *See Bender,* 2011 WL 3812665, at *2. As such, the undersigned finds that ALJ's decision comports with the requirements set forth in *Blakely.*

*2. Credibility*

Plaintiff argues next that the ALJ improperly evaluated Plaintiff's credibility. Specifically, Plaintiff contends that the ALJ erred in focusing on her sporadic work record and in referencing her multiple pregnancies. Plaintiff further alleges that ALJ failed to properly consider the factors outlined in SSR 96-7. Plaintiff's contentions are not well-taken.

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001); *Kirk v. Sec. of H.H.S .,* 667 F.2d 524, 538 (6th Cir.1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's

testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir.1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir.1984)). Social Security Regulation 96–7p describes the requirements by which the ALJ must abide in rendering a credibility determination:

> It is not sufficient for the adjudicator to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain *specific reasons* for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. (emphasis added).

While the ability to afford treatment is a factor in determining the claimant's credibility, it is not the only factor in the evaluation. In this regard, the ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 96–7p.

Here, the ALJ properly assessed Plaintiff's credibility in light of the above requirements. As noted by the Commissioner and in accordance with the regulations,

the ALJ discussed the objective evidence, including Dr. Baula's treatment notes indicating that Plaintiff had moderate problems with functioning. As such the ALJ reasonably concluded that this evidence was inconsistent with Plaintiff's subjective complaints of disabling mental impairments.

The ALJ also considered that Plaintiff did not have a strong work history even before the date she alleged disability, and that other evidence in the record indicated that Plaintiff's unemployment was unrelated to her impairments. (Tr. 14). As noted by the Commissioner, Plaintiff told the consultative examiner that she did not "really know why" she quit jobs and that she "was young. [She] went from job to job. I didn't trust men so sometimes I quit because I didn't trust what was going on when I was not at home." (Tr. 265). Plaintiff also reported that she was never fired, that she was able to understand assigned work tasks, and that she did not have any social problems in work settings when she was working. *Id*. The ALJ also noted that Plaintiff reported that she did not work much in the past because she was pregnant 8 times from 1989 through 2002.

The ALJ also noted that Plaintiff's claim of disability were inconsistent with her reported daily activities. See SSR 96-7p (an ALJ may consider statements about a claimant's daily activities while assessing credibility); *Blacha v. Sec'y of HHS*, 927 F.3d 228, 231 (6th Cir. 1990) (as a matter of law, the ALJ may consider a claimant's household and social activities when assessing credibility). Notably, she lived with her two teenage children and did all of the housekeeping, laundry, and cooking. She was able to drive and go shopping, did yard work as needed, and watched television daily. (Tr. 12, 266). While these activities do not rise to the level of fulltime employment, the

13

ALJ reasonably considered the fact that Plaintiff's activities were inconsistent with her allegations of total disability. *See Meyer v. Comm'r of Soc. Sec.*, No. 1:09-cv-814, 2011 WL 1124698 at *11 (S.D. Ohio Feb. 11, 2011) (Litkovitz, MJ) ("As a matter of law, the ALJ may consider [the claimant's] household and social activities in evaluating her assertions of pain or limitations.") (citing *Blacha*, 927 F.3d at 231).

In light of the foregoing, the undersigned finds that the ALJ's credibility determination properly evaluated the factors outlined in 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p and his decision is substantially supported in this regard. Plaintiff's second assignment of error should therefore be overruled.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT**: 1) the decision of the Commissioner to deny Plaintiff's benefits be **AFFIRMED** because it is supported by substantial evidence in the record as a whole; and 2) as no further matters remain pending for the Court's review, this case be **CLOSED**.

      *s/Stephanie K. Bowman*
      Stephanie K. Bowman
      United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MELISSA ALLEN, | Case No. 1:15-cv-807 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| CAROLYN W. COLVIN, | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).